UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MANUEL FLORES GUADARRAMA, | CASE NO. 2:26-cv-01330-LK |
| Petitioner, | ORDER DENYING HABEAS PETITION |
| v. | |
| BRUCE SCOTT et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Manuel Flores Guadarrama's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I.    BACKGROUND

Flores Guadarrama is a native and citizen of Mexico. Dkt. No. 13 at 2; Dkt. No. 12-1 at 2. He entered the United States "at an unknown place on an unknown date." *Id.*

On January 7, 2026, Flores Guadarrama was taken into custody by Enforcement and Removal Operations ("ERO") during a "targeted enforcement vehicle stop in Seattle, Washington,

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER DENYING HABEAS PETITION - 1

and transferred to [the Northwest ICE Processing Center ("NWIPC")]." *Id.* On the same day, he was "personally served a Notice to Appear ("NTA") by ERO, which was filed with the Executive Office for Immigration Review ("EOIR"), charging him as inadmissible under INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i)." *Id.*; *see also* Dkt. No. 12-1 (the NTA). He was denied bond and has been detained at the NWIPC since January 7, 2026. Dkt. No. 1 at 3; Dkt. No. 13 at 2.

On January 25, 2026, Flores Guadarrama filed an application for asylum and withholding of removal. Dkt. No. 13 at 2. On March 5, 2026, an immigration judge ("IJ") ordered Flores Guadarrama removed to Mexico, denied his applications for asylum and withholding of removal, and granted his application for deferral of removal to Mexico under the Convention Against Torture. *Id.*; Dkt. No. 12-3 at 2–3. On April 17, 2026, ERO notified Flores Guadarrama that ICE intended to remove him to El Salvador. Dkt. No. 13 at 2. He expressed fear of removal to that country, and his claim was referred to U.S. Citizenship and Immigration Services ("USCIS"). *Id.*; Dkt. No. 12-6. USCIS has not yet adjudicated Petitioner's claim of fear of removal. Dkt. No. 13 at 3. Meanwhile, neither the Government nor Flores Guadarrama appealed the decision regarding his removal, so his removal order became final on April 6, 2026. *Id.*; Dkt. No. 1 at 4.

On April 17, 2026, Flores Guadarrama filed a petition for a writ of habeas corpus. Dkt. No. 1. Respondents filed a return on May 4, 2026, Dkt. No. 11, and Flores Guadarrama filed a traverse on May 11, 2026, Dkt. No. 14.

## II.  DISCUSSION

Flores Guadarrama argues that the Government must comply "with strict adherence to statutory protections and constitutionally adequate procedures" before removing him to a third country. Dkt. No. 1 at 5–6. He seeks "a writ of habeas corpus prohibiting Respondents from removing [him] to El Salvador without prior written notice and an opportunity to seek protection

ORDER DENYING HABEAS PETITION - 2

from that country"; "completion of any Immigration Judge review of an adverse screening determination prior to removal"; and "advance written notice before any removal to El Salvador[.]" *Id.* at 7–8. In the alternative, "if the Court determines that removal cannot lawfully proceed within the statutory removal period due to pending protection procedures, [he] respectfully requests that the Court order his release under reasonable conditions of supervision[.]" *Id.* at 8.

Respondents[2] contend that Flores Guadarrama is mandatorily detained under 8 U.S.C. § 1231(a)(2)(A) because he is still in the removal period. Dkt. No. 11 at 1. Respondents further argue that he is not "in custody in violation of the Constitution or laws or treaties of the United States," because his detention is not indefinite, and he "has failed to establish a sufficiently imminent threat of constitutional violation that would entitle him" to the injunctive relief he seeks. *Id.* at 2.

The parties agree that Flores Guadarrama is detained pursuant to 8 U.S.C. § 1231. Dkt. No. 1 at 4; Dkt. No. 11 at 1.

**A.      Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING HABEAS PETITION - 3

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      Flores Guadarrama's Claims Are Unripe**

Article III "requires that a plaintiff's claim be ripe for adjudication." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024). The ripeness doctrine "is designed to 'prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Constitutional ripeness equates with Article III's injury-in-fact requirement for standing." *Id.* at 1184–85. The "well-worn prerequisites" for standing and ripeness are "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 1185 (citation modified) (quoting *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)). A habeas petition "is not the proper vehicle to bring claims that are speculative or otherwise not ripe for review." *Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (denying as unripe habeas claim related to third country removal).

ORDER DENYING HABEAS PETITION - 5

### 1. Flores Guadarrama is Not Entitled to Relief Under *Zadvydas*

As noted above, detention is mandatory during the removal period. 8 U.S.C. § 1231(a)(2). And even after the removal period ends, ICE may continue to detain noncitizens under Section 1231(a)(6) for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. Flores Guadarrama's contention that "[*i*]*f* removal is delayed or becomes impracticable, continued detention *would* raise serious constitutional concerns" is purely speculative now. Dkt. No. 1 at 7 (emphases added); *see also* Dkt. No. 14 at 5 (Flores Guadarrama stating that his *Zadvydas* "argument is prospective and conditional. He does not claim that detention has already become unlawful. Rather, he preserves the principle that detention may not become untethered from its lawful objective if removal cannot proceed in accordance with statutory safeguards."). Thus, his claim under *Zadvydas* is clearly unripe. At this point, while he is still in the removal period, Flores Guadarrama is not detained under Section 1231(a)(6) or entitled to relief under *Zadvydas*.

### 2. Flores Guadarrama is Not Entitled to Injunctive Relief

Flores Guadarrama requests an order "prohibiting Respondents from removing [him] to El Salvador without prior written notice and an opportunity to seek protection from that country," and "completion of any Immigration Judge review of an adverse screening determination prior to removal[.]" Dkt. No. 1 at 7–8. Respondents contend that the Court lacks jurisdiction to halt the execution of a valid order of removal, Dkt. No. 11 at 6, to which Flores Guadarrama responds that he is not challenging the removal order, only seeking "to ensure that removal to El Salvador does not occur unless and until all required third-country protection procedures—including any Immigration Judge review—are fully completed," Dkt. No. 14 at 6.

More persuasive is Respondents' argument that Flores Guadarrama lacks Article III standing for injunctive relief. Dkt. No. 11 at 7–8. This is not a case where the petitioner has shown

ORDER DENYING HABEAS PETITION - 6

that the government violated his due process rights and would likely do so again regarding third country removal. *See, e.g.*, *Sow v. Mullin*, No. 2:26-cv-00617-LK, 2026 WL 1223616, at *6–8 (W.D. Wash. May 5, 2026). Flores Guadarrama has not demonstrated that he "is in custody in violation of the Constitution or laws . . . of the United States[.]"28 U.S.C. § 2241(c)(3). Nor has he shown that a constitutional injury is "concrete and particularized" and "actual or imminent" rather than merely "conjectural or hypothetical." *Flaxman*, 151 F.4th at 1185. As set forth above, a *Zadvydas* violation is not concrete or imminent. Flores Guadarrama's concern that the government might remove him to El Salvador without "required procedures," Dkt. No. 14 at 5, is also speculative and unripe. Although he argues that this claim is ripe because "ICE has formally served [him] with a Notice of Removal to El Salvador," and the Department of Homeland Security has "confirmed that [he] expressed fear and has been referred for third-country screening," Dkt. No. 14 at 2, all this shows is that the government might remove him to El Salvador if his challenge is unsuccessful. It does not demonstrate a likelihood that the government will do so without following required procedures. This claim is accordingly unripe because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Zabadi v. Holder*, 407 F. App'x 219, 221 (9th Cir. 2011) (citation modified), including that Flores Guadarrama will receive an unfavorable final determination of his fear screening, the government will remove him to El Salvador, and it will do so without following required procedures.

The limited evidence in the record does not show a concrete and imminent likelihood that the government will violate required procedures. Rather, the government is following required procedures in that it "referred [Flores Guadarrama] for a third-country fear screening." Dkt. No. 1 at 4. And Flores Guadarrama has already been provided with notice and an opportunity to contest removal to El Salvador. *Id.*; *cf. Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *5 (W.D. Wash. Jan. 9, 2026) (requiring the government to provide a respondent with notice and a

ORDER DENYING HABEAS PETITION - 7

meaningful opportunity to respond before attempting to remove a petitioner to a third country when petitioner had not yet received such notice).

Flores Guadarrama candidly states that he "does not allege . . . that ICE has violated procedure to date." Dkt. No. 14 at 2. Still, he "seeks assurance that removal will not occur until all required steps—including any Immigration Judge review of an adverse screening determination—are fully completed." *Id.* at 4. ERO has stated in a sworn declaration that it will "comply with all required third country removal fear screening proceedings prior to any attempt to execute [Flores Guadarrama's] removal order." Dkt. No. 13 at 3. Although Flores Guadarrama is not required to take the government at its word, the declaration supplies an assurance. Even setting the declaration aside, Flores Guadarrama has not provided any evidence "that the Government would ignore its constitutional requirements" if it does remove him to El Salvador. *De La Rosa Guarin v. LaRose*, No. 25-CV-03085-DMS-VET, 2025 WL 3751704, at *3 (S.D. Cal. Dec. 29, 2025) (finding a noncitizen's third-country removal claim not ripe for adjudication). In light of the speculative nature of Flores Guadarrama's claim, the Court "declines to impose any procedures required for Respondents to effectuate a third country removal." *Gharakhan v. Noem*, No. 25-cv-02879-DMS-AHG, 2025 WL 3539161, at *3 (S.D. Cal. Dec. 10, 2025); *see also Magomedov v. Bondi*, No. C26-0521-SKV, 2026 WL 747102, at *4 (W.D. Wash. Mar. 17, 2026) (denying as speculative request for an injunction prohibiting removal to a third country when petitioner did not show that it was "reasonably likely Respondents will seek to remove him to a third country without due process").

### III.  CONCLUSION

The Court DENIES Flores Guadarrama's petition. Dkt. No. 1. Given the outcome of this and Flores Guadarrama's prior habeas petition filed by the same counsel, *Guadarrama v. Scott*, No. 2:26-CV-00193-TMC, 2026 WL 507673, at *2 (W.D. Wash. Feb. 24, 2026), his counsel is

ORDER DENYING HABEAS PETITION - 8

encouraged to ensure that any petitions she files are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Dated this 1st day of June, 2026.

Lauren King
United States District Judge

ORDER DENYING HABEAS PETITION - 9